Good morning and may it please the court. My name is Emma Reckart of the Northwest Immigrant Rights Project and I represent Mr. Chudier Banguot. First I'd like to thank the court and opposing counsel for your time and consideration in rescheduling arguments for this case. I will seek to reserve three minutes of my time for rebuttal and I will watch the clock. Petitioner challenges the agency's determination that his conviction under Alaska statute 1141-436-A2 is a sexual abuse of a minor aggravated felony. Under the categorical approach in comparing the state statute to the federal generic definition, we see that the state statute is overbroad with respect to intent. Petitioner also challenges the agency's denial of his application for dispositive evidence that he would more likely than not be tortured or killed if removed to South Sudan. I believe that on the second issue, if I understand it correctly, the government concedes that the BIA failed to respond on that issue. So if I'm wrong about that, certainly can talk about that as well. But what is overbroad about the Alaska statute in your view? So the Alaska statute is overbroad because it prohibits conduct where there is no sexual intent required. Or in other words, no intent to achieve sexual gratification required. Is that a requirement in your view of the generic definition? For example, under the federal definition, if someone engaged in sexual abuse because they hated the victim or the victim's brother or whatever, wouldn't that still be sexual abuse even though there's no lust involved? So if we look to this court's case law on that topic, we see that this court has consistently defined sexual abuse of a minor with respect to sexual intent and with respect specifically to the intent to achieve sexual gratification or arousal. So if we look... For federal sexual abuse statutes, and I recognize we're dealing with the generic federal definition here as opposed to the specific federal statute, but the federal statutes count as sexual abuse, sexual contact that's for purposes of humiliation. And I think that goes to Judge Graber's question that that raises a doubt that really libidinal satisfaction is an element. It just has to be a sexual contact, an abusive sexual contact. So I believe Your Honor is referring to 2244, the federal statute on sexual contact. So this Congress does know how to cross-reference to federal statutes in the INA. And in fact, it does in many other provisions of the INA, and it did not do so in this case. It simply stated sexual abuse of a minor. And this court has consistently interpreted that to mean to be a definition that relates to sexual intent or to achieve sexual gratification. So even before establishing the residual definition, which is the definition at issue here, this court in Barón Medina in 1999 analyzed a California statute where it prohibited the touching of a child with lewd intent. And the court found that that statute contains two distinct elements. First, the touching of a child, and second, with sexual intent. And based on the breakdown into those two elements, determined that the conduct clearly fell within the meaning of the words sexual and minor. And then additionally stated that the use of young children as objects of sexual gratification is corrupt, improper and contrary to good order, and thus fits within the definition of sexual abuse of a minor. And this- Counsel, I'm sorry. I thought you were done. Please finish your response. Sure. So this court continued to cite to Barón Medina in subsequent cases until the primary and residual definition were established in Estrada Espinosa and Medina Villa. Again, the Medina Villa definition is the definition that is at issue here. And that definition requires proof of three elements. The first, that the conduct prohibited must be sexual in nature. The second, that the prohibit abuse. So if we look to that case, we see that Medina Villa reaffirms the holding in Barón Medina. And instead of abrogating that holding, again, reaffirms that language, that the use of young children as objects of sexual gratification is corrupt, improper, and contrary to good order. That may be a sufficient element in a state statute to find that it constitutes abuse. But does that mean that Alaska can't take the different approach it took here, where it defines by carefully describing the underlying conduct in a way that essentially gerrymanders it objectively to conduct that is a sexual contact? So that is essentially the government's argument, that this intent is sufficient but not necessary for conduct to fall within the federal generic definition. And the reason that that argument is unavailing is because that would be such a significant departure from the type of analysis that this court has conducted in cases involving sexual contact in the past, in which it has always focused on the sexual intent element, even in statutes where the only conduct prohibited was touching of intimate body parts. Counsel, I do want to move you to another question about the Alaska statute. There is a list of exceptions, and this follows on, I think, from Judge Collins's question. In addition to defining sexual contact to be very focused on things that ordinarily would be considered sexual in nature, there is a list of exclusions for things that don't involve sexual gratification. And if the statute were as broad as you're positing, those exceptions would seem to be irrelevant. So don't they strengthen the argument that the touching is in fact under the Alaska statute involving sexual gratification? So I believe what your honor is referring to the three statutory exceptions, the first for normal caretaker responsibilities, the second for, yes. So while these exceptions do carve out some conduct, they do not carve out all non-sexual conduct. So for example, there are situations in which a defendant could be convicted for conduct that falls outside of the exceptions, but nonetheless lacks this intent to achieve sexual gratification. For example, is there any realistic chance of that? Can you point to any published case or any situation involving your client in which that has actually occurred, that there's something non-sexual or not for sexual gratification, but the conviction has been sustained nonetheless? Yes, your honor. So in response to the realistic probability question, the first response is that under Chavez-Solis, which is controlling in the Ninth Circuit, petitioner is not required to provide a non-hypothetical example in which a defendant's conviction was sustained for overbroad conduct because... Well, that's not my question. My question is, I know you're not abandoning that position, but can you in fact point to any example? Yes, your honor. So one example would be Paratrovic v. State. That is an Alaska case in which the defendant touched his step-granddaughter's breasts to show her where her grandmother's tumors would be. And in defense, the defendant attempted to use the normal caretaker responsibilities exception, and the court disagreed and sustained the conviction. And in doing so, made no finding as to sexual intent. So that's a situation... Did it say that there was no sexual intent? Because it sounds to me like a typical fake reason given by someone who is in fact seeking sexual gratification. And is there anything in the court's holding, I'm not aware of anything that specifies that stating that. So the court never found, never made any factual findings with respect to intent because it's not... Did it make a legal holding that no sexual gratification is required to be convicted? Yes. So a direct quotation from that case is, it is clear that the legislature had a legitimate interest in prohibiting certain types of sexual contact with minors, even when it cannot be sexual arousal or gratification. So the court did make a legal holding that that was not required. We also see in other Alaska cases such as Braun and Ritter, cases in which the defendant and the state respectively attempted to advance the argument that sexual intent is an element of the statute, and the court found otherwise. The court found that it was not. And we also see in the legislative history that the legislature specifically and intentionally broadened the statute from a specific intent to a general intent statute because they were worried that defendants would be able to advance defenses related to intent. So a direct quote from the Senate Journal on the year that the statute was broadened is that the legislature intends to reaffirm that crimes involving sexual contact are general intent crimes. So we see through Alaska case law, through the legislative history, and in the example of Peratrovich v. State, that this intent is not required. That in fact, the Alaska statute is a general intent statute. And that's in contrast with the federal generic definition, which this court has always defined with relation to sexual intent or intent to achieve sexual gratification. Counsel, how do you distinguish the court's holding in Valencia Barragan, where the court stated there that the sexual gratification motive is not a required element of the federal offense? Sorry, Your Honor. Valencia Barragan is a case that involved sexual intercourse. And this is the only distinction that this court has made. The distinction between sexual intercourse and penetration crimes and sexual contact crimes. So with sexual intercourse and penetration crimes, this court has not required sexual intent because those statutes clearly fall within the common meaning of the word sexual. But with sexual contact crimes, those encompass a much more broad range of conduct and therefore must be cabined with an additional intent requirement in order to bring them within the common meaning of the word sexual. I see that I have less than three minutes remaining. So if there are no further questions, I would like to reserve the remainder of my time. You may do that. And we will hear next from the government. Ms. Lott. Thank you. And may it please the court, Melissa Lott on behalf of the U.S. Attorney General. The court should affirm the Board of Immigration Appeals conclusion that petitioner's conviction for attempted sexual abuse of a minor in the second degree is an aggravated felony and should remand for further consideration of deferral of removal under the Convention Against Torture. First, as to the aggravated felony, this court has never required an intent for sexual gratification in order for a statute to be sexual abuse of a minor and in fact has found statutes that are not limited to or do not require such an intent to be sexual abuse of a minor and for good reason. As Alaska courts have recognized, an offender could have motivations other than sexual gratification and the offense is no less sexually abusive. For instance, in Peratrovich, in discussing why Alaska changed its definition of sexual contact, the court noted an earlier case where a clinical psychologist declared that the defendant, who engaged in multiple acts of sexual penetration and contact with his seven-year-old daughter, may have had no sexual motivation for those acts but may have subjectively believed that he could provide sexual education to his daughter and did not believe himself to be sexually molesting her as he demonstrated sexual functioning to her. It's clear that this conduct is no less sexually abusive if the motivation is for some reason other than sexual gratification. The Alaska statute here requires the actual and knowing touching of the most intimate and private body parts of a child under 13 and by excluding normal interactions with a child and ordinary reasons that an older person would have to touch those parts of a young child's body, all that's left is abusive, nefarious, and harmful touching of the intimate body parts of a child, which is sexual abuse of a minor. Counsel, let me ask you to respond specifically to opposing counsel's assertion that the cases involving courts, including ours, stating that no purpose of sexual gratification is required are limited to cases of penetration and don't include other forms of sexual touching. Yes, your honor, so an example is United States versus Grand Boys and that case addressed the abuse of a minor and that definition includes the intentional touching either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. So it's clear that that's not limited to intent for sexual gratification. Another is that a statutory interpretation or was that the federal generic definition? That was looking at the sexual abuse of a minor definition for under the sentencing guidelines, which applies, which is the same as the one for the INA. And so it was there the court was looking at whether the federal definition of sexual contact, but in the context of sexual abuse of a minor. Another example would be this court's unpublished decision from 2020 in a case called Aguilar, and that involved Hawaii's sexual contact statute. And Hawaii expressly did away with a requirement of an intent to sexually gratify like Alaska did. And their definition of sexual contact includes the knowing touching of sexual or intimate body parts. And the court looks at the context of the touching to determine whether a body part is intimate. So for example, the inside of the mouth or the buttocks could be an intimate body part depending on the context. So those are two examples of sexual contact crimes that aren't limited to a motivation for sexual gratification. And in all of these cases, the statutes involve the harmful touching of sexual organs or intimate body parts of a young child. And regardless of what the motivation for the conduct is, it's sexual in nature and it's sexually abusive. Whether it's to sexually gratify or to abuse or harm, it's no less sexually abusive if associated with those motivations. And here the Alaska statute is so narrowly drawn to apply only to sexual organs and the most intimate body parts of a young child. And it excludes touchings that would be normal interactions with a child or a part of normal caretaking or legitimate medical and search reasons. So all that's left is contact that's sexually abusive. So if the court has no further questions on this. I have a question about deferral. Everyone agrees that the BIA's analysis was deficient, but it seems the issue there is whether we remand for the BIA to reconsider it or whether we should conclude that a finding of a likelihood of torture is compelled on this record. So can you address why we shouldn't make that finding here? Yes, your honor, because it involves questions of fact and the likelihood of a future torture. So the board affirmed the immigration judge's factual findings on the convention against torture claim and it acknowledged petitioner's appellate arguments, but it simply found that the immigration judge's findings represented a permissible view of the evidence without providing any reasoning, without meaningfully addressing petitioner's arguments. And so without the board having considered these challenges in a way that reflects their reasoning, it prevents adequate review by this court. And in order to- Frankly, I think the BIA's decision seems to just be legally erroneous because it seems to me that they were insisting on particularized evidence rather than on a particularized risk. You can have a particularized risk of torture without particularized evidence. You know, the conditions in a particular country can be so bad for a particular ethnic group that sending any member of that ethnic group back presents a particularized risk, even though the evidence isn't particularized. And why isn't that the case here? I mean, this is an area that the IGA was saying, well, you could rely on the availability of, you know, human rights groups, and yet this is considered the most dangerous place in the world for human rights workers. And yet there's no risk sending them back? Yes, your honor. I think that that goes directly to the kind of factual arguments that the petitioner raised to the board of immigration appeals. He argued that his evidence showed there'd been an increase in violence in part of South Sudan, that there'd been spikes of violence following prior peace agreements. The international institutions in South Sudan had severe resource constraints, and that the ethnic group to which he belongs had been subject to targeted violence. And he raised these claims to refute the immigration judge's factual findings that violence had decreased, that there was a recent peace agreement, that international institutions could help provide protection, and that there was general violence between government forces and rebel groups. So those are all things that the agency, that the board of immigration appeals needs to weigh those, all of those, you know, the factual evidence, and consider in the first instance. Again, if the court, in order for the court to review it at this point, the court would have to substitute an analysis of, you know, which side in a factual dispute is more persuasive. I would like to ask a sort of a follow-on to Judge Collins's question. The Supreme Court has cautioned us many times, including in Ventura and Thomas, that we can't decide an issue that the court can't decide. And so we can review that decision for whether it's correct or not. Do you agree with that? Or do you think that this is a situation in which essentially we lack the authority to make a determination here? Your Honor, I think, I'm sorry. Your Honor, I think that it's, it would be premature at this point because of the factual nature of the arguments and of the evidence. And so I think that this would be a situation where the court, in order to resolve the factual likelihood of future torture, would have to step in to the role of the agency in weighing the evidence. Counsel, can you give some examples of where you think that the record is deficient? But why would this need to be remanded? And what deficiencies are you, did you want the EIA to address? Yes, Your Honor. So the problem with the, based arguments. So I don't see how that's correct. I'm looking at the BIA's decision that KR four and five, and it seems that they are being addressed. It goes through some of the challenges on the different grounds about his Christian beliefs. And then it goes on, says, despite the respondents appellate arguments, respondent has not shown that any of the what is likely to happen to him if removed are clearly erroneous. And then goes through and discusses that. It resolves this issue, but, and so it's before us. And the problem is that earlier it says, it cites Delgado Ortiz as establishing that generalized evidence of violence and crime that is not particular to aliens is insufficient to establish that it is more likely than not that they would be tortured. That's just legally wrong. That is not what that case says. It does not say particularized evidence. It does say particularized risk, but the BIA asked for particularized evidence, which he doesn't have, but this is a pretty strong case of general evidence, establishing a particularized risk for such a dangerous place in the middle of this kind of ethnic conflict, where it's just not even safe for aid workers to go. Your honor. Yes, I agree that he can, that generalized evidence can show an individualized risk. And so as far as the question of whether he has an individualized risk of torture, I think that here, the Board of Immigration Appeals, it essentially recounted all of the immigration judge's factual findings and reasons, but then just rejected his appellate arguments without any reasoning and just said that they presented that the immigration judge's findings a permissible view of the evidence. But because petitioners' factual challenges to the immigration judge's findings on the likelihood of torture, all of his arguments went directly to those reasons provided by the immigration judge. And so because the board didn't provide its reasoning, it's... And the reasons were not sufficient. So depending on the type of error that was made, sometimes that results in a grant here, and sometimes it results in a remand. But this issue was decided by the BIA and decided, as you can see, erroneously. Yes, your honor. And our position is that the board's decision lacks essential analysis. It lacks any kind of reasoning on petitioners' challenges to the immigration judge's decision. And so our position is that... What if the BIA said, we are denying cat protection because it's Tuesday, and on Tuesday, we never grant cat relief. Do we have to send it back? Or can we say, well, that's a reason, but it's legally insufficient, and the facts that are in front of us compel a certain conclusion. What do we do in the face of that? Well, your honor, when it comes to the factual findings, the board should consider and address those in the first instance. And this court has remanded for convention against torture claims, where the board's reasoning is unclear. For example, in the case ENA, where it was unclear whether the board adopted the immigration judge's reasoning in its entirety, affirmed on alternate grounds, added an additional ground for denying, or simply misconstrued the immigration judge's decision. Such ambiguity in midst of the board's already limited analysis makes us unable to review the decision below in an adequate manner. Another example would be in Aguilar-Ramos. The court remanded where the agency had not considered a portion of the country conditions evidence, specifically there. Counsel, here we have a finding, or a statement by the BIA, that the immigration judge did the fact finding. There was an appeal to the BIA, and the BIA basically said, we're not convinced. But if the factual findings already have been made and considered, I'm not really sure that we have to remand. I understand that you want us to, but I'm not really sure why we would have to. Your honor, there were factual findings made by the immigration judge, but his petitioner's appellate arguments, he cited to evidence in the record for the purpose of refuting factual findings that the immigration judge had made. And so rather than actually weighing the evidence and deciding whether those portions of the record that he cited to, how those arguments impacted the factual findings made by the immigration judge, the board just simply affirmed the immigration judge's decision on that point and just said that immigration judge's decision presented a permissible view of the evidence. But without that reasoning, it's unclear what the board was weighing or how it was weighing it or what it was finding about petitioner's factual, fact-based arguments about the likelihood of future torture. So for that reason, yes, thank you. You've exceeded your time and I think we understand your position. Thank you. You have some rebuttal time remaining. Yes, your honor. And I'd like to briefly address the government's reference to two cases, Kamboa and Aguilar. First of all, as the petitioner has outlined in the briefing, Kamboa was decided before the residual definition of sexual abuse of a minor was established in was not analyzing sexual conduct as a separate element. But also the question at issue in Kamboa was not whether the conviction was a sexual abuse of a minor crime. Actually, the holding in that case just found that if a conviction does constitute a sexual abuse of a minor crime, it is per se a crime of violence. So the ninth circuit actually did not make a sexual abuse of minor analysis in that case. So are you saying that the federal sexual contact or sexual abuse statute that was at issue in the grand voice would not qualify as sexual abuse under the generic definition today, under today's case law? Under this court's case law on the issue of whether something constitutes sexual conduct, that definition would be cabined to an intent to achieve sexual gratification. And yes, the 2244 includes other intents. So it's a, you know, sexual abuse of a person for purposes of humiliation or retaliation with no libidinal aspect to it would not constitute sexual abuse? Yes, that is the petitioner's position. So for example, there could be a situation in which an individual touches the intimate body part of a child with the intent to punish or with the intent, for example, an older brother slapping or pinching a younger sister's breast for purposes that are not sexual in nature, illegitimate and exactly to where in Medina via you argue that sexual gratification is a requirement because I am looking at, oh, gee, what are the page numbers, my page numbers and the official ones are different, but sexual abuse of a minor in one section, the conduct prescribed must be sexual, whether the statute protects a minor and whether the statute requires abuse. And in another portion, we say the generic offense requires four elements, immense rate of knowingly, a sexual act with a minor between certain ages and an age difference between the defendant and minor. So it appears to require conduct, certain conduct, certain ages and a level of knowledge that that's what you're doing. Where in there do you see the requirement that sexual gratification is always an element as well? So Medina via was the case that established the residual definition and it analyzed a statute that was similar to the statute in Medina. And again, it's sightings holding in Medina as well, that the uses of children for as objects of sexual gratification constitute sexual. Then why did we list the generic elements is quoting from Barron Medina without any elements stated that requires what you say it requires. It lists four elements. None of them include sexual gratification. So the first element listed, the requirement of sexual conduct has after Medina via been interpreted to mean to be essentially intent to achieve sexual gratification. And we can see that more clearly actually in Rocha Alvarado and in Aguilar v. Bar, which was actually cited by the government. But I'd like to point out that it actually supports the opposite proposition because the holding in that case is, and this is a direct quotation from that case, while the statutory text would seem to permit conviction for the touching of intimate parts of another through the clothing, without regard to the perpetrator's sexual intent, the Hawaii Supreme Court has narrowed the reach of the statute to ensure that. Why isn't that limited to the through the clothing piece, which is not an issue here. So through the clothing has been a defense that certain petitioners have raised, for example, Rocha Alvarado, the petitioner attempted to raise that defense that he touched, that the statute prohibited touching through the clothing, and that was overbroad. But that argument has been rejected by this court. And in fact, in Rocha Alvarado, the court stated that regardless of the manner of touching, or. But it's said that that's sufficient, but where does it say that it's required, the two things are different. It may be sufficient, but not necessary. And I don't read Rocha Alvarado as saying that it is necessary as distinct from sufficient. I understand the question, Your Honor. And you're correct in that this court has never stated in those specific words that it is necessary and sufficient. However, in every single case in which this court has analyzed a sexual contact statute, it is focused on the element of sexual intent. And so defined for the government would be such a significant departure from that type of analysis that this court has engaged in in the past, in which it is always referenced, regardless of whether the statute talks about the touching of intimate body parts or the touching of any body part, has always, always referenced sexual intent in a recognition that the word sexual or the element of sexual conduct is an intent-centered phrase. Thank you, counsel. You have greatly exceeded your time, and I think we understand your position on the issues here. We thank both counsel for their helpful arguments. The case just argued is submitted, and we are adjourned. This court for this session stands adjourned.
judges: GRABER, COLLINS, CHOE-GROVES